MARY LOU JONES, Adm'r of the Estate of Milton B. Jones, Deceased, Plaintiff-Appellant and Respondent-Cross-Appellee, *v.* MELROE DIVISION, CLARK EQUIPMENT COMPANY, Defendant.—(WALTER MALINOWSKI, d/b/a W. M. Construction, for use of American States Insurance Company, Intervening Petitioner-Appellee and Cross-Appellant.)

Second District   No. 80-681

Opinion filed December 17, 1981.

Charles M. May, of May, Decker and Associates, Ltd., of Waukegan, for appellant.

Sidney Z. Karasik, of Chicago, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, administrator of the estate of Milton Jones, appeals from a judgment of the Circuit Court of Lake County distributing the settlement of wrongful death litigation between her and American States Insurance Company (American States), the worker's compensation carrier of decedent's employer and denying her damages for her counterclaim of improper claims practices. American States cross-appeals.

Milton Jones, the decedent, was killed in an accident arising out of his employment by Walter Malinowski, d/b/a W. M. Construction Company. Plaintiff, Mary Lou Jones, wife of the decedent, applied for worker's compensation benefits. Pursuant to an order of the Illinois Industrial Commission, American States was required to pay to Mrs. Jones the sum of $184.27 weekly for life.

Plaintiff brought a wrongful-death action against Melroe Division, Clark Equipment Company (Melroe), seeking damages under a product liability theory. Melroe manufactured the front end loader involved in the accident which killed decedent. On April 24, 1980, the day after trial commenced, the parties settled the action for the sum of $225,000 and the trial court dismissed the suit. But plaintiff moved the court, on May 13, 1980, to retain jurisdiction of the matter because a controversy had arisen between her and American States, the subrogee of the employer, relating to the execution of releases by American States which would allow plaintiff to collect the settlement from Melroe. American States then filed a petition to intervene under section 5(b) of the Worker's Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.5(b)) (the Act) and to impress a lien upon the settlement fund.

Section 5(b) provides, *inter alia*, that an employer liable to pay compensation under the Act may claim a lien upon any award from a third party. The statute states:

> "(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, *then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation*

*paid or to be paid by him to such employee or personal repre-sentative* including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.

*Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substan-tially contributed to the procurement by suit, settlement or other-wise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement."* (Emphasis added.) Ill. Rev. Stat. 1979, ch. 48, par. 138.5(b).

The petition of American States prayed that the entire settlement fund be impressed with a lien and placed in an interest bearing account; and that it be reimbursed for the $37,720.55 paid by it under the order of the Illinois Industrial Commission at the date of the settlement, less attorney fees and expenses, and that the balance remaining be awarded to it to cover future payment of worker's compensation benefits. In the alternative, American States asked that the trial court enter an order finding that the proceeds remaining from the settlement fund, after reimbursement of the $37,720.55 paid to plaintiff and deduction of expenses and attorney fees, constituted prepayment of a lump sum to plaintiff under section 9 of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.9). That section provides that, upon petition to the Commission, compensa-tion may be commuted to a lump sum equal to the present value of the probable future payments.

Plaintiff filed, on May 19, 1980, a petition to settle the cause of action *nunc pro tunc* to May 13, 1980. The petition was granted, but the trial court ordered that the disbursement of the $225,000 be subject to the order of the court following hearings to adjudicate the lien interest of American States. On May 20, 1980, plaintiff filed a response to American States' petition to intervene and a counterclaim. The response asked that American States be allowed to intervene and to collect such reimburse-ment funds which it is entitled to collect, less fees and prorated expenses, but that American States' other prayers for relief be denied, *i.e.*, that the fund be placed in an escrow account and either that the entire amount be awarded to American States or that the proceeds be found to constitute payment of a lump sum to plaintiff.

Plaintiff's counterclaim alleged that American States had refused to execute a release of its lien on the settlement. She contended that the following computation, based upon a formula utilized in *Vandygriff v.*

*Commonwealth Edison Co.* (1979), 68 Ill. App. 3d 396, 386 N.E.2d 318, set forth the proper distribution of the fund:

"Estate of Milton Jones
Proposed agreement re: distribution
(based on estimated figures*)

| | | | |
|---|---|---|---|
| Total settlement of | | | $225,000.00 |
| W/C already paid ($37,000—25%) | = | *27,750.00 | |
| [25% deduction represents attorney's fees] | | | |
| Costs (16.4% of $7,000) | | * 1,148.00 | |
| Attorney's fees (25% of $225,000) | | 56,250.00 | 85,148.00 |

[Credit to American States for compensation
benefits to be paid in future]                              $139,852.00

139,852.00 [credit]      184.27 [widow's benefit] = 759 weeks
759 weeks = 14.6 years or 14 years and 31 weeks

payments resume December 8, 1994 at $184.27 per week per [Industrial Commission]      77 WC 28767 order and subject to Sec. 7(a) of the Worker's Comp. Act." (Bracketed material supplied.)

The plaintiff further alleged that no just reason existed to delay settlement, inasmuch as the only controversy between the parties related to American States' proposed obligation to resume payments to her 14 years hence. Plaintiff demanded damages for the loss of interest on the $225,000 settlement due to American States' refusal to release its lien. By its answer to the counterclaim, American States denied, *inter alia*, that plaintiff's proposed formula was correct "as such computations show upon their face a partial duplication in the distribution of attorney's fees * * *."

At a hearing on June 3, 1980, the plaintiff proposed a second distributive formula, the *"Franges"* formula, to the trial court. That method of distribution was based upon the decision of the Supreme Court of Michigan in *Franges v. General Motors Corp.* (1979), 404 Mich. 590, 274 N.W.2d 392.

By order entered on June 25, 1980, the trial court found that the plaintiff's distributive formula, based upon *Vandygriff*, constituted reasonable compliance with the requirements of sections 5 and 9 *et seq.* of the Act. But the alternatively proposed distribution based upon *Franges* was found not to be proper. The court also denied plaintiff's claim for fees, costs and alleged loss of interest predicated upon improper claims practice and vexatious delay.

The court found that American States was entitled to intervene and

impress a lien on the $225,000 settlement. It was further found that American States was not entitled to have the funds placed in a bank account; nor to have the balance of the settlement, after reimbursement to it of benefits already paid, awarded to it to cover future payments; nor to have the balance of the funds be found to constitute prepayment to the plaintiff of a lump sum under section 138.9 of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.9). The trial court ordered that American States immediately execute its releases.

On American States' refusal to comply with the order of June 25, plaintiff filed a supplemental counterclaim and petition for a rule to show cause on July 22, 1980. In those pleadings plaintiff realleged her allegations contained in her counterclaim of May 20, 1980 that American States was guilty of improper claims practices. On July 24, 1980, American States presented a post-trial motion asking the court to vacate its order of June 25, 1980. After a hearing on July 24, 1980, the trial court denied American States' post-trial motion and plaintiff's counterclaim for fees, costs, and damages. Upon being advised by American States that it would immediately sign and deliver the required releases, the petition for rule to show cause was also denied. Both sides appeal.

Plaintiff proffered to the trial court two approaches for the distribution of the funds initially awarded to plaintiff. We note here that plaintiff has received worker's compensation benefits actually paid of $37,720.55 based upon an Industrial Commission award of $184.27 per week and a third-party settlement of $225,000, a gross value of $262,720.55.

The first approach suggested by the plaintiff was based upon a formula found in *Vandygriff*. The formula expressed there was:

| "Total settlement of | | $260,000.00 |
|---|---|---|
| Less: | | |
| Workmen's compensation already paid | $15,447.22 | |
| Costs | 3,228.94 | |
| Attorney's fees (25% of $260,000.00) | 65,000.00 | 83,676.16 |
| | | 176,323.84." |

The court ordered that the employer be given credit by the employee for any payments the employer may be obligated to pay by way of permanent total disability or future medical payments until paid in full but not exceeding the employer's "credit" of $176,323.84. (68 Ill. App. 3d 396, 399.) Under this approach the employee was able to retain the benefit of the $15,447.22 and *it was also taken as a reduction in the amount the employer was entitled to be credited for the $260,000 settlement*. This is in

contravention of section 5(b) wherein it provides "* * * from the amount received by such employee or personal representative there *shall be paid to the employer the amount of compensation paid by him* to such employee * * *." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 48, par. 138.5(b).

■■ Further, we disagree with the holding in *Vandygriff* that attorney fees are computed only upon the value of the third-party settlement. Again, referring to the statute the attorney fees in the absence of an agreement are "25% of the gross amount of such reimbursement." "Reimbursement," while not specifically defined, implicitly consists of "compensation paid or to be paid by him [employer] to such employee." (Ill. Rev. Stat. 1977, ch. 48, par. 138.5(b).) In *Vandygriff* the court used only the amount "to be paid" or the third-party settlement and did not include the "compensation paid" being the amount already advanced by the employer.

A careful reading of section 5(b) discloses the formula for the distribution of the fund created by advances of worker's compensation benefits and the third-party settlement: the advance payment of benefits, less attributable attorney fees and costs, is to be repaid to the employer, or its insurance carrier; the phrase "gross amount of such reimbursement" includes the sum of the amounts paid and to be paid by the employer; and the ratio to determine the pro rata share of the costs to be ultimately borne by the employer is that of the "gross amount of such reimbursement" to the third-party settlement for allocation as between the repayment and reimbursement.

With these observations in mind the formula mandated by the statute calls for: (1) repayment of the worker's compensation benefits to the employer less 25% as attorney fees and the pro rata share of the costs, determined by the ratio that the advance payment bears to the gross reimbursement; and (2) a credit to the employer for the amount of the third-party settlement, (a) which credit is reduced by 25% of the third-party settlement, and (b) which credit is further reduced by the ratio that the sum of the benefits paid and the third-party settlement bear to the third-party settlement.

Thus, applying the values in the case at bar to the formula: (a) the gross reimbursement is $262,720.55, (b) the net cash repayment by Jones to American States is $27,285.39, (c) the net credit due American States against a resumption of weekly benefit payments is $162,755.02 or the equivalent of 17 years based upon $184.27, and (d) American States is to resume weekly benefits on June 25, 1997, pursuant to the following:

(a) Gross reimbursement calculation:

| | | |
|---|---|---:|
| 1. | Third party settlement to Jones | $225,000.00 |
| 2. | Benefits advanced to Jones by American States | 37,720.55 |
| | | 262,720.55 |

### Distribution of Cash

(b)   Repayment by Jones to American States calculation:

1.  Total benefits advanced by American States
     to Jones                                              37,720.55
2.  Less: Attorney fees attributable to
     advance of benefits at 25%                           (9,430.14)
3.  Less: Cost attributable pro rata to
     advance of benefits $37,720.55 ÷
     $262,720.55 × $7,000.00                              (1,005.02)
4.  Net repayment of cash by Jones
     to American States                                   27,285.39

### Distribution of Credit

(c)   Credit to American States against resumption
      of weekly benefits to Jones calculation:

1.  Gross reimbursement                                  262,720.55
2.  Less: Credit to Jones for repayment
     of advance benefits                                (37,720.55)
3.  Gross credit to American States
     after deduction of repayment                        225,000.00
4.  Less: attorney fees attributable to
     gross credit at 25% × $225,000.00                  (56,250.00)
5.  Less: Costs attributable to $225,000.00
     as a ratio to $262,720.55 × $7,000.00              ( 5,994.98)
6.  Net credit to American States against
     resumption of weekly benefits                       162,755.02
7.  Calculation of years/weeks by
     $162,755.02 ÷ (52 × 184.27)                          17 years

(d)   Weekly payments of $184.27 to be resumed by
       American States June 25, 1997.

■ After repaying American States $27,285.39, representing its weekly payments of worker's compensation less statutory attorney fees and pro rata costs, Jones will have discharged her obligation to the employer's insurer. Jones will pay the attorney fees and costs arising from the third-party litigation as she would in any civil litigation except that, pursuant to statute, she will be credited for those expenditures to the extent they resulted in a gross reimbursement to the employer and its insurer. American States will have been reimbursed the cash benefits it paid Jones less attorney fees and costs and is credited with a respite from continued weekly payments for 17 years or until June 25, 1997. This disposition and

distribution comports precisely with the statute and produces a very fair result. Ill. Rev. Stat. 1979, ch. 48, par. 138.5(b).


## The Franges Formula

■■ The plaintiff argues that the trial court erroneously refused to apply the formula devised in *Franges v. General Motors Corp.* (1979), 404 Mich. 590, 274 N.W.2d 392, to distribute the cost of recovery of a third-party settlement between the employee or personal representative and the employer. *Franges* included an extensive analysis of approaches used in several States but focused upon the Michigan version of the distribution statute (Mich. Comp. Laws Ann. §418.827 (Supp. 1981-1982)). The court concluded that its statute required that the costs of recovery paid by the third-party plaintiff should be recovered by the plaintiff from the employer as the benefit to the employer accrues. Under our decision today, by contrast, the reimbursement to the third-party plaintiff, here Jones, occurs as a reduction of the period for which the employer is relieved of the payment of weekly benefits. We conclude the *Franges* approach is but a variation on the theme we have adopted, is not mandated in Illinois as it is in Michigan, and adds unnecessary complexity to an already complex computation. We affirm the trial court's rejection of the holding in *Franges*.


## Improper Claims Practice

■■ Plaintiff next asserts that the trial court's refusal to allow her costs, fees, and interest for American States' alleged improper claims practice was an abuse of discretion. She makes reference in her brief to sections 154.5 and 154.6 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, pars. 766.5 and 766.6). Section 154.5 states that it is an improper claims practice for any company to commit any of the acts contained in section 154.6 if it is "committed knowingly in violation of this Act" or if it has been frequently committed. Section 154.6 enumerates 16 acts which constitute improper claims practice "if committed without just cause and in violation of Section 154.5." Plaintiff fails to mention in the argument section of her brief which of the 16 acts proscribed by section 154.6 American States committed, but she quotes from (b) (failure to acknowledge communications re claims with reasonable promptness) and (n) (failing to explain the legal or contractual basis for denial of a settlement offer) in the "Statutes Involved" section of her brief. This argument is rejected. There was no abuse of discretion in view of the lack of evidence that American States committed the acts described in (b) and (n). Moreover, there is no evidence of the requisite mental state. The trial court is affirmed as to its judgment in this regard.

### The Cross-Appeal

We now turn to the assertion of American States that the distribution formula applied by the trial court was erroneous. It argues that the trial court's application of the *Vandygriff* formula was improper and inadequate to protect the worker's compensation interest which the carrier had in the fund.

■■ American States' position is that the distribution of the trial court resulted in a partial duplication of attorney fees. Comparison of the trial court's distribution to the formula we have adopted shows that American States is incorrect. In light of the distribution reflected in this opinion it is apparent that the trial court was correct in assessing attorney fees and costs against both repayment of benefits paid and the credit to which American States is entitled. The conclusion of the trial court was correct, and its action in that regard is affirmed.

American States also attacks that portion of the judgment which states "that rule 138.7(a) is not involved." That section of the Act prescribes the amount of compensation in fatal cases where there is a widow and a child. (Ill. Rev. Stat. 1979, ch. 48, par. 138.7(a).) While we do not understand the trial court's finding that 7(a) is not involved since American State's liability for benefit payments stemmed from that statute, neither is it clear why, according to American States, 7(a) requires that the credit granted by the trial court for 14 years and 31 weeks should be extended to 19 years and 5 weeks. Decedent left surviving a 17-year-old child, Donna Jo, who has since reached maturity and is not attending college and who signed a waiver of all future compensation benefits.

American States refers us to that portion of 7(a) which states:

"If the employee leaves surviving any child or children under 18 years of age, who at the time of death shall be entitled to compensation under this paragraph (a) of this Section, the weekly compensation payments herein provided for such child or children shall in any event continue for a period of *not less than six years.*" (Emphasis added). (Ill. Rev. Stat. 1979, ch. 48, par. 138.7(a).)

It reasons that since it was possible that benefits to the widow, where the Industrial Commission's order stated that payments to the widow were for the benefit of both her and the child, could continue for at least six years, therefore six years must be tacked on to the credit devised. The possible length of time during which benefit payments could be required is irrelevant to the determination of the amounts of the credit and thus the length of the hiatus of payments. The credit determination is strictly a function of dividing the dollar amounts of the gross reimbursement, less the repayment, attorney fees, and costs by the weekly compensation award. Though payments in our case might continue for six years, or longer, they might also be truncated by the deaths of both the widow and the child, but

neither event would affect the amount of the credit. The error was harmless, and the trial court is affirmed as the issue is moot.

The circuit court of Lake County is affirmed in part, reversed in part and the cause remanded for further proceedings.

Affirmed in part, reversed in part and remanded.

NASH and HOPF, JJ., concur.