VIRGINIA ZUBER, Adm'x of the Estate of Ralph Zuber, Deceased, Plaintiff-Appellant, v. ILLINOIS POWER COMPANY, Defendant and Third-Party Plaintiff (R. Dron Electrical Company, Inc., *et al.*, Third-Party Defendants-Appellees).

Fifth District No. 5—85—0717

Opinion filed July 23, 1987.—Supplement opinion filed on granting of rehearing March 4, 1988.

Edward J. Kionka, of Murphysboro, and John E. Norton & Associates, P.C., of Belleville (Thomas C. Rich, of counsel), for appellant.

Thompson & Mitchell, of Belleville (Edward S. Bott, Jr., and Thomas W. Alvey, Jr., of counsel), for appellees.

JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Virginia Zuber, as administratrix of the estate of Ralph Zuber, deceased, appeals from the judgment of the circuit court of St. Clair County which ordered plaintiff to pay United States Fidelity and Guaranty Company (USF&G) the sum of $50,377.23 in satisfaction of USF&G's outstanding workers' compensation lien.

On December 12, 1977, plaintiff filed a complaint against Illinois Power Company (Illinois Power) seeking to recover for damages resulting from the death of her husband, Ralph Zuber, who, at the time of his death, was employed by R. Dron Electrical Company (R. Dron) and was working at a power substation owned by Illinois Power. Plaintiff previously had been awarded workers' compensation benefits by the Industrial Commission as a result of her husband's death. Illinois Power subsequently filed a third-party complaint seeking indemnification from R. Dron and USF&G for any liability to plaintiff.

On April 21, 1983, the circuit court entered an order stating that the case had been settled. In a stipulation for dismissal filed on June 10, 1983, plaintiff and Illinois Power agreed that plaintiff's complaint be dismissed with prejudice without effect on Illinois Power's third-party complaint against R. Dron, and the court entered an order to that effect that same day.

On November 22, 1983, in a letter to the trial judge, R. Dron's attorney recognized that R. Dron was responsible for a portion of the costs and expenses of litigation, since R. Dron was to be reimbursed out of the settlement funds for the workers' compensation payments it had already paid to plaintiff (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b));

however, the letter informed the court that the parties could not agree on the proper allocation of costs.

The details of the workers' compensation benefits and the settlement are as follows: The parties agree that at the time of settlement plaintiff had received workers' compensation in the amount of $73,128.63. While the Industrial Commission award is not included in the record on appeal, the foregoing sum apparently consists of a lump sum award, burial expenses and $224.41 per week for 285 weeks (through May 4, 1983). USF&G, R. Dron's workers' compensation insurance carrier, apparently terminated the installment payments after May 4, 1983, in light of the settlement. The parties refer to the installment payment portion of the award at various times as an annuity for life and also as an annuity for 20 years, or an annuity for 20 years subject to plaintiff's survival. Plaintiff's affidavit states that she was entitled to $224.41 per week for a total of 1040 weeks, or 20 years. We assume, for purposes of this disposition, that the Industrial Commission award was for a period of 20 years subject to plaintiff's survival. See Ill. Rev. Stat. 1983, ch. 48, par. 138.7(a).

The fund created by the settlement between plaintiff and Illinois Power consisted of a lump sum of $302,466.54 and an annuity of $900 per month for life. The cost of the annuity was $86,529.00.

Plaintiff's attorney submitted a letter to the trial judge together with an exhibit listing the litigation and medical expenses and a payout sheet accounting for the settlement fund. The payout sheet indicates the following in substance:

| | | |
|---|---|---|
| Received | | $302,466.54 |
| Attorney Fee (1/3 of the recovery; however, plaintiff's attorneys do not claim a fee on the annuity) | 100,822.18 | |
| Litigation Costs | + 31,574.79 | |
| Medical Costs | + 67.25 | |
| Workers' Compensation Lien Benefits paid $73,128.63 Less 25% attorney fee (credit to plaintiff) - 18,282.15 | | |
| | + 54,846.48 | |
| | | -$187,310.70 |
| NET AMOUNT DUE TO CLIENT | | $115,155.84 |

The "net amount due to client" is presumably in addition to the annu-

ity purchased as part of the settlement with Illinois Power. The payout sheet also indicated that the sum of $54,846.48 was being held in escrow pending determination of USF&G's *pro rata* share of costs. Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b).

The circuit court entered its order assessing costs on January 14, 1985. The court found that the amount of the workers' compensation lien was $73,128,63, that the amount of the settlement was $388,994.55, and that the reasonable expenses of litigation were $24,829.21. The court therefore computed USF&G's share of costs as $73,128.63/$388,994.55 (.187994) x $24,829.21. Although our arithmetic yields a figure of $4,667.74, the circuit court found USF&G's share of costs to be $4,469.25. The court then subtracted $4,469.25 from the $54,846.48 held in escrow and ordered plaintiff to pay USF&G the sum of $50,377.23 in satisfaction of USF&G's workers' compensation lien. Plaintiff's reply brief states that this sum has been paid.

Plaintiff subsequently filed a motion to vacate or reconsider, which was denied after a hearing. Plaintiff argued at the hearing on the motion and contends on this appeal that the circuit court erred in failing to take into account in computing USF&G's share of the costs the present value of future payments which the employer would have been required to continue to make but for the efforts of plaintiff's attorneys in securing a settlement with Illinois Power.

Section 5(b) of the Workers' Compensation Act provides as follows:

"Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.

Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted

in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b).)

It is plaintiff's position that an employer's obligation to make installment payments of workers' compensation benefits is not terminated by plaintiff's recovery of damages from a third-party tortfeasor. Plaintiff asserts that this court should either: (1) order the employer to continue making installment payments and order plaintiff to reimburse 75% of each payment, retaining 25% for attorney fees; or (2) authorize the termination of the employer's obligation to make future payments and award plaintiff 25% of the present value of those payments for attorney fees. Plaintiff also asserts that, in any event, the employer is liable for the costs attributable to that portion of the settlement which will be used as a setoff against the employer's future installment obligations.

R. Dron and USF&G contend, and the trial court agreed, that the term "reimbursement" in section 5(b) includes only amounts already paid to plaintiff. Therefore, R. Dron and USF&G claim that an employer has no liability for attorney fees or costs on that portion of the third-party recovery which will offset the employer's obligation to make future installment payments.

■ We agree with the plaintiff that the employer's obligation to make future installment payments does not automatically terminate when the recipient of workers' compensation benefits obtains a recovery from a third-party tortfeasor. (*Denius v. Robertson* (1981), 98 Ill. App. 3d 83, 87, 424 N.E.2d 336, 339.) However, we note that a court does have the authority to protect an employer's "right of reimbursement" by providing that payments from a third-party tortfeasor be credited or offset against the employer's future obligations. (*Freer v. Hysan Corp.* (1985), 108 Ill. 2d 421, 426, 484 N.E.2d 1073, 1079.) Such an order would not be an improper modification of an award of the Industrial Commission. 108 Ill. 2d 421, 426, 484 N.E.2d 1073, 1079.

■ Furthermore, we also conclude that for purposes of computing the employer's liability for attorney fees and costs, the term "gross amount of such reimbursement" as used in section 5(b) of the Workers' Compensation Act includes both compensation already paid and compensation to be paid in the future. There can be no question that if, by plaintiff's settlement with Illinois Power, R. Dron and its insurance carrier are no longer required to make future payments of $224.41 for the remaining 755 weeks, then they received a benefit from plaintiff's attorneys' efforts. Our conclusion is supported by a number of cases

which have assessed attorney fees against the employer on that portion of a third-party recovery which was credited or set off against the employer's future workers' compensation obligations. (See *Lewis v. Riverside Hospital* (1983), 116 Ill. App. 3d 845, 852, 452 N.E.2d 611, 614; *Jones v. Melroe Division, Clark Equipment Co.* (1981), 102 Ill. App. 3d 1103, 1112, 430 N.E.2d 1385, 1389; *Denius v. Robertson* (1981), 98 Ill. App. 3d 83, 87, 424 N.E.2d 336, 339; *Vandygriff v. Commonwealth Edison Co.* (1979), 68 Ill. App. 3d 396, 399, 386 N.E.2d 318, 319-20; *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern National Insurance Group* (7th Cir. 1984), 750 F.2d 619, 625 ("25 percent of the benefits which [the employer] derives").) We note that R. Dron and USF&G apparently made a unilateral decision to terminate the installment payments shortly after settlement had been reached and before the stipulation and order were entered.

It remains to be decided how the employer's share of attorney fees and costs is to be calculated. In *Vandygriff*, the workers' compensation payments were apparently payable for life, because the court allowed the employer a setoff against future payments in a sum not to exceed the entire amount of the settlement, less benefits previously paid, costs and attorney fees. (*Vandygriff v. Commonwealth Edison Co.* (1979), 68 Ill. App. 3d 396, 399, 386 N.E.2d 318, 320.) The court assessed the statutory 25% attorney fee on the entire amount of the settlement and assessed all costs against the employer. 68 Ill. App. 3d 396, 399, 386 N.E.2d 318, 319-20.

In *Denius*, the workers' compensation award was an annuity for life. (*Denius v. Robertson* (1981), 98 Ill. App. 3d 83, 84, 424 N.E.2d 336, 337.) The court ordered that, out of any settlement or judgment, the employer's insurance carrier would be reimbursed for all benefits previously paid, less costs and less attorney fees in the amount of 25% of the entire settlement or judgment amount. The employer then received a credit or setoff for the remaining amount, which was paid to the plaintiff, and its obligation to make future installment payments was suspended until that setoff was exhausted. 98 Ill. App. 3d 83, 87-88, 424 N.E.2d 336, 339-40.

In *Jones*, the workers' compensation award was an annuity for life. (*Jones v. Melroe Division, Clark Equipment Co.* (1981), 102 Ill. App. 3d 1103, 1105, 430 N.E.2d 1385, 1386.) The plaintiff settled the third-party litigation for $225,000, at which time plaintiff had already received $37,720.55 in workers' compensation benefits. The court interpreted "gross reimbursement" to include the $37,720.55 in addition to the $225,000 out of which the $37,720.55 was to be paid. (102 Ill. App. 3d 1103, 1109, 430 N.E.2d 1385, 1388-89.) The court therefore assessed statutory attorney fees on both $37,720.55 and $225,000, even

though plaintiff's attorneys were apparently responsible for achieving only the $225,000 settlement. In calculating the credit to which the employer was entitled, the court deducted the previously paid workers' compensation benefits, attorney fees and costs from $262,720.55 instead of $225,000. 102 Ill. App. 3d 1103, 1110, 430 N.E.2d 1385, 1390.

In *Lewis*, the workers' compensation benefits were also apparently payable for life and were greater than the third-party settlement because the court assessed all costs of the third-party litigation against the employer's insurance carrier, Aetna, and assessed statutory attorney fees against the entire third-party settlement amount. (*Lewis v. Riverside Hospital* (1983), 116 Ill. App. 3d 845, 851-52, 452 N.E.2d 611, 615.) The court ordered that from the settlement Aetna be first reimbursed for workers' compensation benefits previously paid, to arrive at a gross credit. (116 Ill. App. 3d 845, 852, 452 N.E.2d 611, 615.) Aetna was to pay a proportionate share of costs and statutory attorney fees from this reimbursement. The court then deducted the remainder of the costs and statutory attorney fees to arrive at a net credit. In reaching this result, the court criticized the definition of "gross reimbursement" used by the court in *Jones*. 116 Ill. App. 3d 845, 849, 452 N.E.2d 611, 613.

Finally, in *Williams*, the workers' compensation award included burial expenses and an annuity for life. The only question before the court was the manner in which the statutory 25% attorney fee should be paid. (*Williams, McCarthy, Kinley, Rudy & Pichla v. Northwestern National Insurance Co.* (7th Cir. 1984), 750 F.2d 619, 620.) The employer proposed a calculation similar to that used in the cases just described: a *pro rata* share of costs and the statutory attorney fees attributable to future benefits would be deducted from the gross credit. (750 F.2d 619, 621.) This results in a smaller credit and the period during which the employer's payments would be suspended would be shorter. The court of appeals rejected this approach, noting that the employer thus deferred paying costs and fees until a much later date and, if the plaintiff died before the employer's credit was exhausted, the employer would pay no costs or fees at all beyond what was already paid on account of the reimbursement of previous benefits. (750 F.2d 619, 621-22.) The court instead adopted the approach urged by the plaintiff: After reimbursing the employer for benefits previously paid, out of which reimbursement the employer paid costs and fees attributable thereto, the employer was entitled to suspend future payments until the credit was used up. (750 F.2d 619, 621.) However, the fees and costs attributable to suspended payments would be paid weekly until either the credit was exhausted or the plaintiff died or remarried, whichever occurred first. 750 F.2d 619, 621.

We find the reasoning and rationale of *Williams* to be persuasive. Applying the foregoing conclusions to the case at bar, we make the following calculations: Out of the settlement amount of $388,995.54, USF&G, as the employer's insurer, shall be reimbursed the sum of $73,128.63 for workers' compensation benefits previously paid. Out of said reimbursement, USF&G is obligated to pay statutory 25% attorney fees in the amount of $18,282.16 and costs of $4,667.89. The amount of such costs is determined by applying the ratio of "benefits to the employer/total settlement" ($73,128.63/$388,995.54 or .188) to the costs of the third-party litigation, $24,829.21. Therefore, out of the funds held in escrow, plaintiff's attorneys should have paid USF&G the sum of $50,178.58 ($73,128.63 - $18,282.16 - $4,667.89), not $50,377.23. Therefore, USF&G should repay to plaintiff the sum of $198.65.

With respect to the employer's obligation for future payments, the obligation to make full weekly payments of $224.41 is terminated. However, every payment that the employer is excused from making because of the third-party settlement is a benefit to it. Therefore, USF&G, as R. Dron's insurer, shall pay each week statutory 25% attorney fees and costs attributable to that benefit. Each week the employer shall pay attorney fees of $56.10 ($224.41 x .25) and costs of $14.32 ($224.41/$388,995.54 x $24,829.21), for a weekly total of $70.42. This obligation shall continue until the date the original Industrial Commission award would have expired, or until plaintiff dies (Ill. Rev. Stat. 1983, ch. 48, par. 138.7(a)), whichever occurs first. Since plaintiff's attorneys have already been reimbursed out of the settlement for these litigation costs, and since plaintiff's attorney at oral argument stated that the attorneys make no claim to additional attorney fees, the employer's weekly payments shall be made to plaintiff directly.

Finally, on remand, the circuit court is to determine how many weeks have passed since the last installment payment (May 4, 1983). USF&G shall then pay plaintiff a lump sum equal to that number of weeks times $70.42 and thereafter begin its weekly payments of $70.42.

This cause is remanded to the circuit court for further proceedings consistent with the foregoing opinion.

Reversed and remanded with directions.

HARRISON and LEWIS,* JJ., concur.

---

*Justice Lewis replaces Justice Jones, who retired after the cause was taken under advisement.

## SUPPLEMENTAL OPINION ON GRANTING OF REHEARING

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Virginia Zuber, as administratrix of the estate of Ralph Zuber, petitioned this court for rehearing pursuant to Supreme Court Rule 367 (107 Ill. 2d R. 367). In her petition, plaintiff argues that this court misinterpreted certain statements made by her counsel at oral argument. Specifically, plaintiff asserts that her attorney did not in fact indicate that no claim to additional attorney fees was being made, as we indicated in the last sentence of the first full paragraph of page 12 of our slip opinion. Accordingly, plaintiff asks that we delete that sentence, which reads:

"Since plaintiff's attorneys have already been reimbursed out of the settlement for these litigation costs, and since plaintiff's attorney at oral argument stated that the attorneys make no claim to additional attorneys fees, the employer's weekly payments shall be made to plaintiff directly." (See 158 Ill. App. 3d 360.)

In its place, plaintiff argues that we should substitute the following language:

"Since plaintiff's attorneys have already been reimbursed out of the settlement for these litigation costs, the employer shall pay $14.32 per week to plaintiff directly, and the balance of $56.10 per week to plaintiff's attorneys."

We granted the petition for rehearing. After holding oral argument on the issue raised by that petition and upon consideration of the parties' briefs, the record, and the applicable law, we now agree that we were incorrect in believing that plaintiff's attorneys meant to make no claim to additional attorney fees. Nevertheless, we adhere to our conclusion that the weekly payments for attorney fees, as well as costs, which the employer must continue to make should be paid directly to plaintiff. We therefore cannot accept the substitute language proffered by plaintiff's counsel.

As we have noted, plaintiff's third-party action against Illinois Power yielded a settlement of $388,995.54. The settlement consisted of a lump-sum payment of $302,466.54 and an annuity which cost $86,529. Pursuant to an agreement between plaintiff and her attorney, the attorneys were to keep 33⅓% of this total recovery. They did not do so. Instead, they claimed a fee of $100,822.18, approximately 26% of the amount they recovered. Plaintiff's attorneys now suggest that they actually charged nothing to plaintiff for the annuity portion of the settlement and that their fee was based solely on the lump-sum pay-

ment. In our view, this is merely an accounting fiction and is of no consequence. Plaintiff's attorneys were free to reduce their fees however they saw fit. The reality remains that the fee paid by plaintiff covered all of the benefits she received in the settlement, and her attorneys could not now claim additional sums from her for the services they performed in securing that settlement or any portion of it.

The attorney fees, along with costs, were deducted by plaintiff's counsel from the settlement fund before it was paid over to plaintiff. Thus, those fees and costs were borne directly by plaintiff. Plaintiff, however, was not the only party to derive benefit from the litigation. The employer profited as well, because the third-party action created a fund from which the employer (actually, the employer's insurer) could obtain reimbursement for past workers' compensation payments, and the employer was excused from making future payments.

There was no agreement between plaintiff's employer and plaintiff or her attorney for payment of attorney fees by the employer for the services performed by plaintiff's attorneys which enabled the employer to secure these benefits. Pursuant to section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(b)), the employer was therefore required to pay 25% of the gross amount of the reimbursement it received as its share of the attorney fees incurred in connection with the third-party claim, just as it was obligated to pay its *pro rata* share of costs and reasonably necessary expenses in connection with that claim.

Contrary to the argument now made by plaintiff's attorneys, they cannot recover fees from plaintiff by taking 26% "off the top" of the settlement fund obtained on plaintiff's behalf, and at the same time recover statutory fees of 25% from the employer out of the gross amount of the reimbursement which the employer is now able to receive. To hold otherwise would mean that plaintiff's attorneys would end up recovering fees twice for the same services, once from plaintiff and once from the employer.

That this is so is easily illustrated. Plaintiff was charged a fee of about 26%. This means that of every dollar she got in the settlement, she had to pay her lawyers 26¢. This fee was paid even on the $73,128.63 which plaintiff had to use to satisfy the employer's workers' compensation lien. Thus, plaintiff paid her attorneys about $19,013.44 (.26 x $73,128.63) out of the $100,822.18 total fee for getting her this money. Of course, not all of the $73,128.63 was paid to the employer. Plaintiff's attorneys held back 25%, the statutory rate, yielding an additional fee of $18,282.15 on the same $73,128.63 for which plaintiff had already paid them $19,013.44. We do not believe that the attorney fees provision of section 5(b) of the Act (Ill. Rev.

Stat. 1983, ch. 48, par. 138.5(b)) was intended to countenance such double recovery.

This issue of double recovery with respect to the workers' compensation lien on past benefits has not been raised. As to future payments, however, the problem remains. We have determined that the employer must still make payments for fees and costs, yet plaintiff's attorneys have already been paid more than the statutory rate by plaintiff for the work which has entitled them to these fees. With respect to these future payments, double recovery can be avoided only by ordering that the weekly payments of $56.10 in attorney fees, like the weekly payments of costs in the amount of $14.32, be paid directly to plaintiff, as we have done in our original opinion.

For the foregoing reasons, our original opinion is hereby modified by deleting the last sentence of the first full paragraph on page 12 of the slip opinion and replacing it with the following:

"Since plaintiff's attorneys have already been reimbursed out of the settlement for these litigation costs, and since plaintiff's attorneys have already received their fees from that settlement, the employer's weekly payments shall be made to plaintiff directly."

Opinion modified.

CALVO* and LEWIS, JJ., concur.