DONALD R. RUDOLF, APPELLEE, v. TOMBSTONE PIZZA CORPORATION, A FOREIGN CORPORATION, APPELLANT.

333 N.W.2d 673

Filed May 6, 1983. No. 82-327.

Robert K. Silverman of Silverman & Silverman, for appellant.

Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

BOSLAUGH, McCOWN, and HASTINGS, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

BOSLAUGH, J.

The plaintiff, Donald R. Rudolf, commenced this action under the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 1978), to recover commissions due him from the defendant, Tombstone Pizza Corporation. The defendant counterclaimed for amounts alleged to be due it for inventory shortages and insufficient fund checks received from customers.

In early March 1980 the plaintiff met with Chad Patterson, Tombstone's district sales manager, to discuss a job as a route salesman. The compensation was to be on a commission basis at 9 cents a pizza, or $275 per week, whichever was greater. The $275 was understood to be a guaranteed minimum and the plaintiff was to receive $15 for each new account he developed. A truck and fuel were to be furnished by the defendant. The plaintiff began work for Tombstone on March 17, 1980. At that time there was no written agreement between the parties and the plaintiff was not informed about the defendant's practices regarding inventory shortages or bad checks received from a customer.

The plaintiff was trained by Patterson, his supervisor, for 2 weeks. The nature of the job was to call on new and existing accounts and to service these accounts. The inventory of frozen pizza was kept in a warehouse to which the plaintiff, Patterson, the deliverymen, and another salesman had a key, but the plaintiff was responsible for the inventory. The plaintiff saw Patterson about once a week and was directed in all of his job responsibilities by Patterson.

In June 1980 the plaintiff attended a training program at the defendant's main office in Medford, Wisconsin. At that time he signed a written agreement prepared by the defendant which provided: "I, _____, *as an employee* of Tombstone Pizza Corporation, agree to the following terms and conditions throughout *the course of my employment*. My signature at the bottom represents the company's assurance that I am in agreement with these terms and conditions:

"(1) Throughout *the course of my employment*, the delivery truck, all products, ovens, signs, advertising materials, carry-out bags and other materials and equipment used in *the course of my employment* and paid for by Tombstone Pizza Corporation shall remain the property of Tombstone Pizza Corporation.

"(2) That upon termination of *employment*, I agree to the following:

"(a) To return all unsold products, pizza ovens, signs, advertising material, carry-out bags, the delivery truck and other materials and equipment paid for by Tombstone Pizza Corporation. I further agree to pay all monies due Tombstone Pizza Corporation from the sale of its products or such payment will be made via a reduction in commission checks.

"(b) I will immediately discontinue the use of all trade names, trademarks, signs, forms of advertising, indicative of Tombstone Pizza, its symbols or trademarks or its products.

"(c) I will for one year from the date of termination refrain from selling, either directly or indirectly, any pizza products in the territory I was assigned to through *the course of my employment*, nor will I directly or indirectly interfere with any business or trade carried on by Tombstone Pizza Corporation with its customers.

"(d) I will immediately submit to Tombstone Pizza Corporation a complete and accurate list of all customers I was servicing at my date of termination." (Emphasis supplied.)

Through August 1980 the plaintiff reported more overages than shortages on his inventory reports. However, in September inventory shortages began to develop. Beginning in late September 1980 the defendant began applying the plaintiff's checks to his account in order to reduce the amount of shortage. At the time the first payment was withheld, the plaintiff was unaware that this was the defendant's practice. Also, several insufficient fund checks were charged against the plaintiff's account. The plaintiff was unaware of this practice until the first occurrence.

There was no direct evidence as to the cause of the inventory shortages. The shortages were charged against the plaintiff's account regardless of fault because the plaintiff was responsible for the inventory. However, on cross-examination, the plaintiff testified that the shortages began to appear shortly after the second route salesman was given access to the inventory. The defendant's evidence disputed this.

The plaintiff testified that he quit his employment with the defendant; the defendant alleged that the plaintiff was fired. In any event, the plaintiff's employment ended on October 24, 1980. The net amounts due the plaintiff for 4 weeks had been applied to the shortages up to that date. The defendant also advised the plaintiff that all amounts withheld from the commission for the payment of taxes

would be applied to the shortages. The total amount withheld, excluding amounts paid for insurance, was $1,078.19. The shortage remaining at the time of trial was $1,296.14.

Trial was had to the court, which found that the plaintiff was an employee of the defendant and that the defendant had no right to withhold payments due the plaintiff. The trial court awarded the plaintiff $1,078.19 and attorney fees in the amount of $539.10. The defendant was ordered to pay an additional $1,078.19 to the clerk to be distributed to the common schools of the State of Nebraska as provided in § 48-1232. The counterclaim was dismissed.

The defendant contends that the Nebraska Wage Payment and Collection Act was not applicable because the plaintiff was not an "employee" of the defendant.

The pertinent sections, §§ 48-1229 and 48-1230, provide: "As used in sections 48-1228 to 48-1232, unless the context otherwise requires: (1) Employer shall mean any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased individual, or the receiver, trustee, or successor thereof, employing any person as an employee, except that employer shall not be construed to include the state;

"(2) Employee shall mean any individual permitted to work by an employer; and

"(3) Wages shall mean compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis."

"Except as otherwise provided in this section, each employer shall pay all wages due its employees on regular days designated by the employer or agreed upon by the employer and employee. Thirty days' written notice shall be given to an employee before regular pay days are altered by an employer.

An employer may deduct, withhold, or divert a portion of an employee's wages only when the employer is required to or may do so by state or federal law or by order of a court of competent jurisdiction or the employer has written agreement with the employee to deduct, withhold, or divert. Whenever an employer separates an employee from the payroll, the unpaid wages shall become due on the next regular pay day or within two weeks of the date of termination, whichever is sooner."

Section 48-1231 of the act permits an "employee" to whom "wages" are owed to sue the "employer" for payment. By statutory definition an employee is "any individual permitted to work by an employer." An employer is anyone "employing any person as an employee." The act applies if an individual in the employ of another has a right to "wages" as defined in the statute.

We think it is clear that the plaintiff was an "employee," an "individual permitted to work" by the defendant; that the defendant was an employer employing the plaintiff as an "employee"; and that the amount due the plaintiff was "wages," "compensation for labor or services rendered by an employee." The Nebraska Wage Payment and Collection Act was applicable in this case.

The defendant contends that the act was not applicable because the plaintiff was an independent contractor. If this were the statutory criterion, the conclusion still would not be supported by the record. The nature of the contractual relationship between the parties is an issue for determination by the fact finder. See, *Curry v. Bruns*, 136 Neb. 74, 285 N.W. 88 (1939); *Stephens v. Celeryvale Transport, Inc.*, 205 Neb. 12, 286 N.W.2d 420 (1979); *Barton v. Hobbs*, 181 Neb. 763, 151 N.W.2d 331 (1967). The criteria for determining whether one is an independent contractor or an employee include the right of control, the independence the workman enjoys, the degree of supervision of the work, whether tools are provided by the

workman or the other party, the method of payment, and the contractual understanding between the parties. *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983); *Meyer v. State Farm Mut. Auto. Ins. Co.*, 192 Neb. 831, 224 N.W.2d 770 (1975). See, also, Restatement (Second) of Agency § 220 (1958).

In the present case the contract was denominated as one of "employment." The defendant controlled and supervised the plaintiff's work activities. All supplies, including the truck and fuel, were furnished by the defendant. Payment was made on a guaranteed basis. Under these rules the finding that the plaintiff was an employee was not clearly wrong. Findings of fact by the trial court have the force and effect of a jury verdict and will not be set aside unless clearly wrong. *Graff v. Farmers Mut. Home Ins. Co.*, 211 Neb. 13, 317 N.W.2d 741 (1982).

The defendant further contends that the finding that the defendant did not have the right to withhold commissions owed to the plaintiff was unsupported by the evidence. Section 48-1230 of the act requires a written agreement before an employer may deduct, withhold, or divert an employee's wages.

The finding that no written agreement existed authorizing the defendant to deduct, withhold, or divert the plaintiff's commissions is supported by the record. The written agreement provided that a reduction in commission checks would be made if a salesman did not turn over all moneys due the defendant from the sale of its product. There was no direct evidence as to the cause of the inventory shortages and no proof that missing pizzas had been sold. The agreement was silent as to what would be done in the event of inventory shortages or bad checks. The plaintiff testified that he did turn over all moneys from the sale of the product.

Since there was no written agreement authorizing the withholding of commissions for inventory shortages, the counterclaim was properly dismissed.

The plaintiff is allowed the sum of $500 for the services of his attorney in this court.

The judgment is affirmed.

AFFIRMED.