MARY ANN NEKUDA, PERSONAL REPRESENTATIVE OF THE ESTATE OF RAPHAEL NEKUDA, DECEASED, APPELLEE, V. WASPI TRUCKING, INC., A FOREIGN CORPORATION, JEFFREY DE ANGELO, APPELLEES, AND THE STATE OF NEBRASKA, APPELLANT.

388 N.W.2d 438

Filed May 30, 1986.   No. 84-952.

Robert M. Spire, Attorney General, and William J. Orester, for appellant.

Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas, for appellee Nekuda.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Grant, J.

This case involves the allocation of attorney fees between an employer and the personal representative of the estate of a deceased employee under the provisions of Neb. Rev. Stat. § 48-118 (Reissue 1984). Section 48-118 applies to suits brought against third parties for injuries caused by the third party to an employee entitled to workmen's compensation benefits from his employer for the same injuries. The State of Nebraska, Department of Roads (State), as the employer of the deceased workman, appeals from an order of the district court for Douglas County, Nebraska, allocating attorney fees following a successful recovery by Mary Ann Nekuda, personal representative of the estate of Raphael Nekuda, from a third party. For the following reasons we modify the judgment of the trial court and remand the cause for further proceedings.

The record before us shows the following. The original proceeding out of which this appeal developed was an action in tort brought by Mary Ann Nekuda to recover damages against

the defendant tort-feasors, Waspi Trucking, Inc., and Jeffrey De Angelo, for the wrongful death of her husband, Raphael Nekuda. The State was made a party defendant for the purpose of preserving its statutory right of subrogation under § 48-118 of the Nebraska workmen's compensation law.

Raphael Nekuda was killed in a motor vehicle accident on October 4, 1983. On that date Mr. Nekuda was an employee of the State, acting within the scope of his employment, and was operating a State truck while traveling east on Interstate 80 in Sarpy County, Nebraska. The truck was struck from the rear by a tractor-trailer owned by Waspi Trucking and operated by Jeffrey De Angelo. The force of impact caused the truck Mr. Nekuda was operating to leave the traveled portion of Interstate 80, travel down an embankment, and ultimately overturn, causing injuries leading to Mr. Nekuda's death.

The third-party tort-feasors, Waspi Trucking and Jeffrey De Angelo, failed to make any offer of settlement. Mrs. Nekuda filed a petition on August 15, 1984, against Waspi Trucking and Jeffrey De Angelo, claiming damages for the wrongful death of her husband. The State filed its answer on September 17, 1984, and set forth its anticipated potential exposure and subrogation claim for $241,208.33 under the Nebraska workmen's compensation law and joined with Mrs. Nekuda in praying for judgment against the defendants.

Prior to trial, counsel for Mrs. Nekuda secured a settlement in the amount of $200,000 from the defendants, as full satisfaction of all claims pending against them.

On October 1, 1984, Mrs. Nekuda filed a motion for an order approving the settlement and apportioning the proceeds of the recovery, including expenses and attorney fees, between her and the State. An evidentiary hearing was conducted regarding this motion on October 29, 1984. At that hearing Mrs. Nekuda and the State stipulated that the settlement amount for $200,000 was fair and reasonable to both Mrs. Nekuda and the State; that the total payment made by the State to Mrs. Nekuda under workmen's compensation law from October 5, 1983, to October 26, 1984, was $11,093.07; that the "future benefit which the State receives by the temporary cessation of benefits to Mrs. Nekuda" under the workmen's

compensation law (or, as phrased by the State's counsel, "the State's entire liability computed to its present value") was $128,449.44; and that the State's total interest in the recovery was $139,542.51 ($11,093.07 + $128,449.44). The parties further agreed that the expenses, other than attorney fees, were minimal, and therefore all concerned treated the attorney fees as the total expense of recovery.

Mrs. Nekuda then adduced testimony that she and her counsel had entered into a "standard contingency arrangement" which provided for a fee of one-third of a recovery where her claim was settled after the filing of a suit against the tort-feasors. The testimony further showed that Mrs. Nekuda's attorney was not approached with offers of settlement and that, after giving the State and the potential defendants 30 days' notice of the filing of a suit, Mrs. Nekuda's attorney did file suit. Testimony also showed that the State had not agreed to a proposed lump-sum settlement of Mrs. Nekuda's workmen's compensation claim and had not agreed to the amount of attorney fees to be paid by the State for services rendered by Mrs. Nekuda's attorney in pursuing the claim against the tort-feasors. The State adduced no evidence at this hearing.

On November 19, 1984, the trial court entered its order after the hearing on this motion and found that the settlement of $200,000 was fair and reasonable to all parties and that the recovery had been secured through the sole efforts of Mrs. Nekuda's attorney. The court ordered that the sum of $11,093.07 be paid over to the State as reimbursement for compensation benefits previously paid; that the remaining proceeds of $188,906.93 be paid to Mrs. Nekuda; and that the State pay a fee of one-third of $139,542.51 (representing the total interest of the State in the recovery: $11,093.07, previously paid, plus $128,449.44, the commuted value of the State's future liability), or $46,467.66 [sic], to plaintiff's attorney for services rendered on behalf of the State. The State timely appealed to this court.

The State assigns three errors: (1) That the court erred in ruling that under the provisions of § 48-118 the proceeds of a recovery by an injured employee against a third-party

tort-feasor should be paid to the plaintiff without first deducting the attorney fees taxable to the State, the employer of the injured employee; (2) That the court erred in interpreting the law by ruling that the State was liable for the payment of an attorney fee equal to one-third of the recovery made on behalf of the State; and (3) That the court erred in ruling that the share of attorney fees taxable to the State should be paid independently of the proceeds received from the third-party tort-feasors.

The interpretation of a statute is a question of law. Regarding questions of law, this court has an obligation to reach its conclusion independent from the conclusion reached by a trial court. *Boisen v. Petersen Flying Serv., ante* p. 239, 383 N.W.2d 29 (1986). Findings of fact by the trial court have the force and effect of a jury verdict and will not be set aside unless clearly wrong. *Rudolf v. Tombstone Pizza Corp.*, 214 Neb. 276, 333 N.W.2d 673 (1983).

Section 48-118 provides that where a third party is held liable for the injuries or death of an employee, while that employee was in the course and scope of his employment, then the employer is subrogated, to the extent of his liability under the Nebraska Workmen's Compensation Act, for any amounts recovered from that third party. Section 48-118 also provides a procedure for allocating attorney fees between parties. The only issues on appeal in this case concern the amount of the attorney fees due from the State and when and how those fees should be paid.

In its second assignment of error, the State contends the trial court erred by ruling that the State is liable for the payment of an attorney fee equal to one-third of the recovery made on its behalf. The evidence before us shows that counsel for Mrs. Nekuda and Mrs. Nekuda entered into a contingent fee arrangement whereby counsel would receive a fee corresponding to one-third of the total amount recovered against Waspi Trucking and Jeffrey De Angelo if the claim was resolved after the actual filing of suit. The trial court found that this contingent fee arrangement was "customary, standard, fair and reasonable in this jurisdiction." No evidence was adduced by the State to the contrary. The evidence supports the court's

factfindings as to the amount of the fee. The trial court ordered the State to pay one-third of its recovery amount to Mrs. Nekuda's attorney in satisfaction of attorney fees rendered to it. The State's second assignment of error is without merit.

The other assignments of error raised by the State are consolidated for discussion purposes because both errors raise the issue as to when and in what manner attorney fees are to be paid by an employer following a successful recovery by the employee from a third party. In determining this issue we are governed by § 48-118. That section first states that an employee has the right to recover from a third party causing injury or death to an employee. The statute further states that, in such situation, the employer "shall be subrogated to the right of the employee . . . against such third person . . . ."

In particular, § 48-118 provides in part:

Any recovery by the employer against such third person, in excess of the compensation paid by the employer after deducting the expenses of making such recovery, shall be paid forthwith to the employee or to the dependents, and shall be treated as an advance payment by the employer, on account of any future installments of compensation; *Provided*, that nothing in this section or act shall be construed to deny the right of an injured employee or of his personal representative to bring suit against such third person in his own name or in the name of the personal representative based upon such liability, but in such event an employer having paid or paying compensation to such employee or his dependents shall be made a party to the suit for the purpose of reimbursement . . . .

In the case at bar, Mrs. Nekuda, after proper notice to the employer, the State, filed her petition against the tort-feasors, joining the State as a defendant when the State did not join in that petition. This procedure is authorized by § 48-118.

The controlling parts of § 48-118 are that the recovery is to be treated as "an advance payment"; that the "reasonable expenses of making such recovery" shall be deducted from the recovery; and that such expenses "shall be prorated" between the employer and employee, "which expenses . . . shall be apportioned by the court between the parties as their interests

appear at the time of such recovery."

Applying the language of § 48-118 to this case, we first see that, of the $200,000 recovery, $11,093.07 must be "reimbursed" to the State as moneys already advanced by the State at the time of the settlement. Of that sum which has been recovered for the State, the State must pay Mrs. Nekuda's counsel, who was determined by the trial court to have effectuated the recovery, a sum equal to one-third as "reasonable expenses."

It is with regard to the remaining $188,906.93 of the recovery that difficulties arise. It was stipulated by the parties that "the State's entire liability computed to its present value" was $128,449.44. Therefore, of the $188,906.93, the State was entitled to the benefit of $128,449.44 and Mrs. Nekuda to $60,457.49. Those figures represent the interests of the parties as "their interests appear at the time of such recovery." Under § 48-118 the subrogated interest of the employer, for computation and allocation of fees and expenses, is not restricted to the workmen's compensation benefits actually paid, but is measured by the workmen's compensation liability relieved or discharged by the recovery against the third party.

The "reasonable expenses" of the recovery were determined by the trial court as an amount equal to one-third of the recovery. One-third of the $188,906.93 recovery (as to this phase of the recovery) is $62,968.97. Of those expenses the State's share is $42,818.90. The State's share of expenses (attorney fees) was arrived at in the following manner:

$$\frac{\text{STATE'S INTEREST IN NET RECOVERY } \$128,449.44}{\text{TOTAL NET RECOVERY } \$188,906.93} = \begin{array}{c}\text{STATE'S PERCENTAGE SHARE}\\ \text{OF NET RECOVERY}\\ 68\%\end{array}$$

| TOTAL ATTORNEY FEES FOR NET RECOVERY ($188,906.93 x 1/3) | | $62,968.97 |
|---|---|---|
| STATE'S PERCENTAGE SHARE OF NET RECOVERY | x | 68% |
| STATE'S SHARE OF ATTORNEY FEES | | $42,818.90 |

Section 48-118 provides that "attorney's fees shall be apportioned by the court between the parties as their interests appear at the time of such recovery." In this case the State interest in the total net recovery "at the time of such recovery"

was 68 percent of the total net recovery ($188,906.93). Thus, the State should bear 68 percent, or $42,818.90, of the attorney fees.

Having decided this, we now turn to the issues as to when the fee should be paid and how it should be paid. The trial court found that the entire fee due Mrs. Nekuda's attorney should be paid immediately. We agree with the trial court on that point because § 48-118 contemplates the immediate "deducting [of] expenses of making such recovery" and the payment of the balance of the recovery to the employee or dependents. The State concedes this point in its brief.

We disagree, however, with the trial court as to the timing of the payment and the manner in which the fees owed by the State should be paid. The trial court ordered the State to pay its share of attorney fees separate and apart from the recovery amount. In other words, the State, as the employer, would have to draw its check to Mrs. Nekuda's attorney for the employer's share of attorney fees rather than having the attorney fees taken out of the settlement proceeds. At this point Mrs. Nekuda would have taken out of the proceeds her share of the total attorney fees of $20,150.07 ($62,968.97 - $42,818.90). This approach would result in Mrs. Nekuda's paying attorney fees of $20,150.07 and retaining in her immediate possession the sum of $168,756.86 ($188,906.93 - $20,150.07). She would have the use of such money over the entire period that weekly payments would have been due her. Such a result would operate to give Mrs. Nekuda an unfair, immediate advantage over the employer by requiring, in effect, that the employer lump-sum the benefits due Mrs. Nekuda. Such settlements are not mandatory, but by agreement of the parties. Neb. Rev. Stat. §§ 48-140 et seq. (Reissue 1984). In this case the State has specifically stated it does not want a lump-sum settlement.

We recognize, on the other hand, that the employer is receiving a benefit from the recovery during each week that it does not have to pay the weekly benefits to the dependent of the deceased workman. We determine that the employer's proportionate amount of the attorney fees should be paid each week (or any other agreed-upon period) to the dependent of the deceased workman as a reimbursement of the expenses incurred

in obtaining periodic benefits received by the employer, the State in this case. We hold, therefore, that the trial court should have ordered that the State's projected share of attorney fees be paid out of the settlement proceeds and that the State should reimburse Mrs. Nekuda each week as the State obtains the weekly benefit of not being required to pay Mrs. Nekuda.

Two problems remain, however: Mrs. Nekuda's right to future compensation payments and the payment of the State's share of the attorney fees. The State has indicated to Mrs. Nekuda that it did not desire to commute its liability to present value. We hold, in that situation, where an employer refuses to lump-sum periodic lifetime workmen's compensation benefits due an employee or dependents, and where a recovery is made against a third party, the obligation of the employer to continue to make lifetime payments is not extinguished but merely suspended for the period of time the employer's share of the recovery satisfies the continuing obligation due the employee. It is the State's position that the commuted value of $128,449.44 is used only to calculate expenses "at the time of such recovery." However, under § 48-118, the State is entitled to credit for "advance payment" of the total of $128,449.44, and not that sum less expenses. In other words, the amount recovered from the third-party tort-feasors suspends the State's obligation to pay workmen's compensation benefits to Mrs. Nekuda until such time as the advance payments credit is exhausted. Based upon Mr. Nekuda's salary at the time of his death and the Nebraska Workmen's Compensation Act, specifically Neb. Rev. Stat. § 48-122.01 (Reissue 1984), the State is required to pay Mrs. Nekuda $164.05 per week in workmen's compensation benefits until her death or the termination of her "widowhood."

The time for which payment is suspended is computed as follows:

$$\frac{\text{STATE'S INTEREST IN RECOVERY} \quad \$128,449.44}{\text{MRS. NEKUDA'S WEEKLY BENEFIT} \quad \$164.05} = \frac{\text{TIME PERIOD BENEFITS}}{\text{ARE SUSPENDED}} \quad \begin{array}{c}\text{782.99 WEEKS} \\ \text{OR 15.06 YEARS}\end{array}$$

When these "advance payments" of $128,449.44 have been used up, the State shall resume its required payments of $164.05 per week, provided that the statutory contingencies have not occurred.

With regard to the State's paying its share of the expenses, we hold that the State must reimburse Mrs. Nekuda for its share of such attorney fees over the time period for which weekly benefits are suspended. The amount Mrs. Nekuda should be reimbursed each week is computed as follows:

$$\frac{\text{STATE'S SHARE OF ATTORNEY FEES} \quad \$42,818.90}{\text{TIME PERIOD BENEFITS ARE SUSPENDED} \quad 782.99 \text{ WEEKS}} = \frac{\text{WEEKLY REIMBURSEMENT}}{\$54.69}$$

This means that the employer's burden of the attorney fee expenses will be paid each week in the amount of one-third of the weekly benefits of $164.05.

The reason for this weekly reimbursement of the recovery costs is twofold. First, under the Nebraska Workmen's Compensation Act, employers must bear an appropriate share of the expense. Requiring Mrs. Nekuda to pay the State's share of attorney fees, without reimbursement, would violate this rule and possibly result in the employer's never paying any share of the expenses of recovery. Second, because of the third-party recovery, the employer is relieved of paying its weekly workmen's compensation benefit to Mrs. Nekuda for 15 years. The fact that the employer is relieved of paying these benefits amounts to a weekly extinguishment of a liability by the employer to the employee. This constitutes a benefit to the employer. It follows that the obligation to share legal expenses attributable to that recovery should be satisfied each week by the employer, as that liability is relieved because of the third-party recovery. Thus, the State is required to reimburse Mrs. Nekuda $54.69 for each week up to 782.99 weeks, as long as she remains alive and unmarried. After that she is entitled to her full benefits under the Nebraska Workmen's Compensation Act.

In so ordering, we recognize we may have departed to some degree from our holding in *Gillotte v. Omaha Public Power Dist.*, 189 Neb. 444, 203 N.W.2d 163 (1973). In that case, Gillotte, an employee of the Larson Cement Stone Company, was seriously injured while in the course of his employment, due to the negligence of the defendant Omaha Public Power District (OPPD). A trial resulted in a judgment for Gillotte and against OPPD in the sum of $79,263. The attorneys for Gillotte's employer, Larson Cement Stone Company, offered to take part in the trial but were requested not to do so by Gillotte's attorney.

Thereafter, Gillotte filed an application for determination of the amount of the employer's subrogated interest and future liability, and for allocation of fees and costs. The workmen's compensation benefits paid to Gillotte up to that point had totaled $11,673.24. The present value of future disability payments due Gillotte under the Nebraska Workmen's Compensation Act was $18,167.75. The State's total interest in the award was, therefore, $29,840.99.

In affirming the trial court we said at 452-53, 203 N.W.2d at 168:

> Under section 48-118, R.R.S. 1943, the subrogated interest of the employer, for computation and allocation of fees and expenses, is not restricted to the workmen's compensation benefits actually paid, but is measured by the workmen's compensation liability relieved or discharged by the recovery against the third party.

> Under section 48-118, R.R.S. 1943, the trial court has discretion to prorate and apportion the reasonable expenses and fees between the employer and employee as their interests appear at the time of recovery in a suit against a third party. The trial court specifically found that the defendant employer and its insurer, by reason of plaintiff's successful recovery from Omaha Public Power District, recovered not only the $11,673.24 already paid to or for the plaintiff, but were also relieved of the obligation to pay the plaintiff disability benefits of a present value of $18,167.75. The court determined that the total advantage to the defendant employer and its insurer that resulted

from plaintiff's successful recovery against the third party defendant amounted to $29,840.99. The court also determined that the reasonable value of the services of plaintiff's attorney to the defendant employer and its insurer was $10,000. Those determinations were neither arbitrary nor unreasonable. Under the terms of section 48-118, R.R.S. 1943, they should be specifically approved.

By affirming the trial court's order in *Gillotte, supra,* we also affirmed the manner in which the attorney fees were to be paid. In this case we approve all of the holdings in *Gillotte* except insofar as *Gillotte* indicates that the employer must pay its share of the attorney fees of the recovery immediately at the time of the recovery.

In *Gillotte, supra,* the trial court determined that the employer's share of the reasonable expenses and fees incurred by the plaintiff in preparing for trial was $10,428.53. Since the employer had already paid workmen's compensation benefits to the employee amounting to $11,673.24, the trial court offset the total expenses of trial incurred by the employer against the amount previously paid and directed the payment of $1,244.71 to the employer as full satisfaction of the subrogation claims. By doing so the entire attorney fees attributable to both past and future benefits were to be paid at the time of the court's order by an immediate offset of the employer's total expenses in connection with the employer's share of the recovery. The *Gillotte* approach was followed by the trial court in this case. That case is overruled only insofar as it required the immediate payment of the fees and expenses.

We recognize that other states have followed the *Gillotte* procedure. See, *Owens v. C & R Waste Material,* 76 N.J. 584, 388 A.2d 977 (1978); *Prettyman v. Utah State Department of Finance,* 27 Utah 2d 333, 496 P.2d 89 (1972). We decline to continue to follow that approach to this problem.

The antithesis to the approach just set out is that adopted in cases such as *Jones v. Melroe Div., Clark Equipment Co.,* 102 Ill. App. 3d 1103, 430 N.E.2d 1385 (1981), and *Ruediger v. Kallmeyer Brothers Service,* 501 S.W.2d 56 (Mo. 1973). In those cases the employer makes no payment out of pocket at all in

connection with the reimbursement of the expenses of a recovery from a third party. Instead, the benefit to the employer is reduced by the employer's share of expenses of the recovery, and the employer is given credit for advance payments of the lesser amount, thus reducing the time during which payments are suspended. The employer then must resume payments at an earlier date. This approach is used to reimburse the employee for the employer's share of the expenses of recovery. We decline to adopt that approach.

The approach which we have adopted is a variation of the general approach in *Franges v General Motors*, 404 Mich. 590, 274 N.W.2d 392 (1979). We believe the approach adopted by this court in this case reaches the result required by our statutes.

The order of the district court is hereby affirmed as to the amount of attorney fees but is reversed as to the manner of payment for the fees. This cause is hereby remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., dissenting.

It seems to me that this is a very simple case. There are only two issues to be decided: how the net recovery should be distributed and the credit the employer should receive. The statute is clear and determines the answer to both questions.

Neb. Rev. Stat. § 48-118 (Reissue 1984) provides that the amount of the recovery against a third person, in excess of the compensation paid by the employer, and after deducting the expenses of making the recovery, shall be paid forthwith to the employee or the dependents.

The recovery in this case was $200,000. The expense of making the recovery was the attorney fee of one-third of the recovery, or $66,666.67. The net recovery was $133,333.33 ($200,000 - $66,666.67). The employer had paid compensation in the amount of $11,093.07. This amount, less the employer's proportionate share of the expenses, must be paid to the employer ($11,093.07 - $3,697.69 = $7,395.38). Since there are no other dependents, the balance of the net recovery, $125,937.95 ($133,333.33 - $7,395.38), must be paid forthwith

to the plaintiff.

The statute further provides that the amount paid to the employee or to the dependents shall be treated as an advance payment of any future installments of compensation. The amount paid to the plaintiff, $125,937.95, divided by the weekly rate of compensation, $164.05, results in the employer's receiving credit for 767.68 weeks. At the end of that time, if the plaintiff is alive and her "widowhood" has not ended, the employer must resume payment of the weekly benefit.

Since the employer is unwilling to enter into a lump-sum settlement, the present value of its potential liability must be disregarded. To the extent *Gillotte v. Omaha Public Power Dist.*, 189 Neb. 444, 203 N.W.2d 163 (1973), is in conflict, it should be disapproved.

HASTINGS and CAPORALE, JJ., join in this dissent.