ELLEN C. SMART, APPELLEE, V. SCRIVNER/FOOD 4 LESS AND
GALLAGHER BASSETT SERVICES, INC., APPELLANTS.
574 N.W. 2d 505

Filed February 27, 1998.    No. S-97-693.

John R. Timmermier, of Timmermier, Gross & Burns, for
appellants.

Glenn A. Pettis, Jr., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD,
STEPHAN, and McCORMACK, JJ.

GERRARD, J.

While employed by Scrivner/Food 4 Less (Scrivner), Ellen
C. Smart was involved in an on-the-job accident on March 20,
1992, and, as a result, she sustained bodily injuries.
Immediately following the accident, Gallagher Bassett
Services, Inc. (Gallagher), Scrivner's claims agent, began pay-
ing Smart workers' compensation benefits, which payments
continued until January 27, 1993. On December 2, 1993, and
July 7, 1994, Gallagher made payments for medical case-man-
agement services rendered in an attempt to assess Smart's med-

ical status. On December 1, 1995, Smart filed a petition in the Nebraska Workers' Compensation Court, claiming that she was entitled to additional payments of compensation. Scrivner and Gallagher filed an answer, contending that Smart's claim was barred under Neb. Rev. Stat. § 48-137 (Reissue 1993), which provides that an injured employee has 2 years from the time of the making of the last payment of compensation to file a claim. Agreeing with Scrivner and Gallagher, a single judge of the compensation court entered an order of dismissal, finding that Smart's December 1, 1995, petition was barred by the statute of limitations because Gallagher made its last payment of compensation on January 27, 1993. However, on review of this determination, a three-judge review panel of the compensation court, in a two-to-one decision, reversed the judgment and remanded the case, finding that Smart's petition was timely filed because Gallagher's December 2, 1993, and July 7, 1994, payments for medical case-management services were payments of compensation that tolled the statute of limitations. Scrivner and Gallagher appeal. Because we determine that payments for medical case-management services do not constitute payments of compensation which toll the statute of limitations, we reverse the judgment of the three-judge review panel and remand this cause to the Workers' Compensation Court with directions to dismiss Smart's petition.

## FACTUAL BACKGROUND

While employed by Scrivner, Smart was involved in an on-the-job accident on March 20, 1992, and, as a result, she sustained shoulder and cervical injuries, a fractured elbow, and associated psychological trauma. Immediately following the accident, Gallagher began paying Smart workers' compensation benefits for her injuries, which payments continued until January 27, 1993. On December 2, 1993, and July 7, 1994, Gallagher made payments of $108.80 and $91, respectively, to General Rehabilitation Services Inc. (GRS) for the medical case-management services of GRS' employee, Patricia Hart.

On December 1, 1995, Smart filed a petition in the Workers' Compensation Court, claiming that she was entitled to additional payments of compensation for her continuing disabilities as a result of the March 20, 1992, accident. Scrivner and

Gallagher filed an answer, contending that Smart's claim was barred by the applicable statute of limitations. Section 48-137 provides, inter alia, that an injured employee has 2 years from the date of the accident or 2 years from the time of the making of the last payment of compensation to file a claim for workers' compensation benefits.

Prior to the hearing on Smart's petition, Hart testified by deposition that she was employed by GRS as a medical case manager during 1993 and 1994. Hart described her function and purpose as a medical case manager as follows: "I review files. See what's going on. Meet with the clients, employees, doctors, [and] therapist[s]. See what's going on in the case, how things are going. And make recommendations. Assist as needed to get [the injured employee] medically better." Hart testified that Gallagher had asked her on October 11, 1993, to reopen Smart's case and to assess Smart's medical status and make a recommendation.

By letter dated December 7, 1993, Hart informed Smart's attorney of Gallagher's request that she reopen Smart's case. Hart wrote, in relevant part, as follows:

> I am a rehabilitation specialist with [GRS]. My role is to assist injured workers by providing medical case management or vocational assistance to return to work. I have been asked by . . . Gallagher . . . to work with your client, Ellen Smart. [Gallagher] has requested [that] I meet with Ms. Smart, if possible, to get an update on her status and to find out where we stand from the medical/vocational standpoints.

Based on her experience, Hart testified that, in her opinion, Gallagher believed that it still owed a duty to help Smart from both a medical and a vocational standpoint. Hart then discussed the services that she conducted on Smart's case, which included reviewing Smart's file and making arrangements with Smart's attorney to meet with Smart, although no meeting or conversation between Smart and Hart ever took place. In addition, Hart made telephone calls and sent correspondence to Gallagher and analyzed whether Smart still suffered from posttraumatic reactive depression disorder in light of new circumstances that had come to Gallagher's attention.

Following the evidentiary hearing on Smart's petition, a single judge of the compensation court entered an order of dismissal, finding that Smart's December 1, 1995, petition was barred by the 2-year statute of limitations because Gallagher made its last payment of compensation on January 27, 1993. Smart filed an application for review of the single judge's determination. A three-judge review panel of the Workers' Compensation Court, in a two-to-one decision, reversed the judgment and remanded the case for further proceedings, finding that Smart's petition was timely filed because Gallagher's December 2, 1993, and July 7, 1994, payments for GRS' medical case-management services were payments of compensation which tolled the statute of limitations. Scrivner and Gallagher appeal.

## SCOPE OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Roth v. Sarpy Cty. Highway Dept.*, 253 Neb. 703, 572 N.W.2d 786 (1998); *Acosta v. Seedorf Masonry, Inc.*, 253 Neb. 196, 569 N.W.2d 248 (1997). However, as to questions of law, an appellate court in workers' compensation cases is obligated to make its own determinations. *Roth v. Sarpy Cty. Highway Dept., supra*; *Sheridan v. Catering Mgmt., Inc.*, 252 Neb. 825, 566 N.W.2d 110 (1997).

## ASSIGNMENT OF ERROR

Scrivner and Gallagher's three assignments of error can be consolidated and restated into the following single assignment: The three-judge review panel of the compensation court erred in determining that Smart's December 1, 1995, petition was timely filed by finding that the December 2, 1993, and July 7, 1994, payments for medical case-management services were payments of workers' compensation which tolled the 2-year statute of limitations as set forth in § 48-137.

## ANALYSIS

Section 48-137 provides that when payments of workers' compensation have been made, the statute of limitations will not take effect until the expiration of 2 years from the time of the making of the last payment of compensation. See *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997). Scrivner and Gallagher assert that Smart's December 1, 1995, petition was not timely filed because Gallagher's December 2, 1993, and July 7, 1994, payments for GRS' medical case-management services were not payments of workers' compensation, but, rather, were payments to an agency for administrative expenses incurred by it in an attempt to assess Smart's medical status. Smart, on the other hand, contends that Gallagher's payments for GRS' services were payments of workers' compensation because Hart's December 7, 1993, letter created the reasonable impression that Hart was intending to provide Smart with vocational assistance. Therefore, the issue we must resolve is whether the payments made by Gallagher for GRS' medical case-management services were payments of "compensation" which tolled the statute of limitations.

The term "compensation" is not defined in the Nebraska Workers' Compensation Act (Act). We have, however, previously characterized "compensation" as a chameleonlike expression which takes its meaning from the context in which the word is used in the statute. See *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 451 N.W.2d 910 (1990). In addressing the definition of "compensation" under § 48-137, we have held that where an employee who suffered an accident arising out of and in the course of his or her employment requests and receives medical services and medicines furnished by the employer, it constitutes the receipt of compensation within the meaning of the Act. *Schwieger v. Island Supply Co.*, 178 Neb. 547, 134 N.W.2d 233 (1965). In addition, we have held that payments made by the employer's insurance carrier for hospital and medical expenses incurred by the injured employee "clearly constitute payments of compensation." *Baade v. Omaha Flour Mills Co.*, 118 Neb. 445, 448, 225 N.W. 117, 119 (1929). The rationale underlying our prior holdings, as succinctly stated by Professor Larson in 7 Arthur Larson & Lex K. Larson, Larson's

Workers' Compensation Law § 78.43(h) at 15-348 (1997), is that the "furnishing of any kind of benefit required by compensation law indicates an acceptance of liability and thus satisfies the policy of the 'last payment' clause."

Although we have held that payments for medical services constitute payments of compensation, we have never addressed the question of whether payments for medical case-management services constitute payments of compensation. However, as distinguished from medical services, an employer is not obligated to provide medical case-management services with regard to an injured employee's claim. See, e.g., Neb. Rev. Stat. § 48-120(1) (Reissue 1993) ("employer shall be liable for all reasonable medical, surgical, and hospital services . . . which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment"); Neb. Rev. Stat. §§ 48-120.01 through 48-124 (Reissue 1993). The evidence reveals that, in the instant case, Gallagher hired GRS to assess Smart's medical status and to analyze whether Smart still suffered from posttraumatic reactive depression disorder in light of new circumstances that had come to Gallagher's attention. In that regard, GRS' employee, Hart, reviewed Smart's file and attempted to make arrangements with Smart's attorney to meet with Smart, although no meeting or conversation between Smart and Hart ever took place. In contrast to medical services intended for the benefit of the injured employee, it is clear that the type of medical case-management services provided in this case were neither required by the Act nor did the services provide a benefit to Smart so as to indicate an acceptance of liability by Scrivner and Gallagher. Hart's function was to assess Smart's medical status and make an administrative recommendation to Scrivner and Gallagher.

Therefore, we hold that payments for medical case-management services that are not required by the Act and that result in no benefit to the injured employee do not constitute payments of compensation which toll the statute of limitations set forth in § 48-137.

Smart, however, argues that Hart's December 7, 1993, letter created the reasonable impression that Gallagher was continu-

ing to recognize liability by intending to provide her with vocational rehabilitation services. In support of her argument, Smart relies on *Maxey v. Fremont Department of Utilities*, 220 Neb. 627, 636-37, 371 N.W.2d 294, 301 (1985), wherein we stated that the statute of limitations will be tolled if from the "conduct of the employer, it may reasonably be inferred that such payments were made with an intent that payment constitute compensation and a conscious recognition of liability for compensation benefits on the part of the employer."

While it is true that Hart's letter stated that she was a rehabilitation specialist and that her role was to assist injured workers "by providing medical case management or vocational assistance to return [them] to work," Hart testified that she never provided Smart with vocational assistance and that the sole purpose for her employment by Scrivner and Gallagher was to assess Smart's medical status. Indeed, the record is clear that Smart derived no benefit, in the form of vocational assistance, from the services provided by Hart, since the nature of Hart's services was purely administrative in determining whether Smart still suffered from a psychiatric disorder. Therefore, it cannot reasonably be inferred that Gallagher's payments for Hart's services were made with an intent to provide Smart compensation in the form of vocational assistance or that Scrivner and Gallagher were continuing to recognize liability for Smart's disability, since Scrivner and Gallagher were not obligated to provide the type of medical case-management services rendered in the instant case. Accordingly, we conclude that Gallagher's December 2, 1993, and July 7, 1994, payments for GRS' medical case-management services rendered in an attempt to assess Smart's medical status were not payments of compensation which tolled the 2-year statute of limitations, and, thus, Smart's December 1, 1995, petition was not timely filed.

## CONCLUSION

Based on our independent determination of the dispositive question of law, we conclude that the three-judge review panel of the Workers' Compensation Court erred in finding that Gallagher's December 2, 1993, and July 7, 1994, payments for GRS' medical case-management services were payments of

"compensation" within the meaning of § 48-137. Therefore, there is not sufficient competent evidence in the record of a payment of compensation to Smart after January 27, 1993; thus, there is no sufficient evidence to warrant the order of reversal entered by the three-judge review panel. Accordingly, the judgment of the three-judge review panel is reversed, and this matter is remanded to the Workers' Compensation Court with directions to dismiss Smart's petition.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.