GLORIA THOMAS, APPELLANT, V.
LINCOLN PUBLIC SCHOOLS, APPELLEE.
622 N.W. 2d 705

Filed February 20, 2001. No. A-99-1342.

Elaine A. Waggoner, of Waggoner Law Office, for appellant.

John M. Guthery and Jeanette Stull, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

## BACKGROUND

On November 25, 1991, Gloria Thomas was injured in an automobile accident within the course and scope of her employment with Lincoln Public Schools (LPS). Thomas was a passenger in a van owned by LPS, which was struck by a vehicle owned and operated by Kathryn K. Romjue. LPS paid Thomas workers' compensation benefits for medical expenses and lost wages, with its last payment of any compensation benefit occurring on July 26, 1994. This appeal raises the issue of the effect of a settlement with the third-party tort-feasor, Romjue, upon the 2-year statute of limitations for workers' compensation benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

Thomas and LPS jointly sued Romjue for Thomas' injuries and LPS' subrogation interest in the district court for Lancaster County, but our record does not reveal the date when the original petition was filed. However, our record shows that Thomas and LPS filed an amended petition on June 20, 1996. Thomas' counsel made a written settlement offer to Romjue's insurance carrier for $50,000, the policy limit, on November 26, 1997, which the carrier accepted on December 11. But on December 12, Thomas decided to withdraw her offer to settle. On that same day, LPS filed a motion with the district court seeking court approval of the $50,000 settlement pursuant to Neb. Rev. Stat. § 48-118 (Reissue 1998). This statute allows a party to a lawsuit possessing a subrogation claim, such as LPS, to seek the district court's assistance to require a coparty, such as Thomas, to accept a "fair and reasonable" settlement offer. Before the court ruled on this motion, Thomas and LPS agreed to settle the lawsuit against Romjue for the $50,000 which Thomas had demanded and to which Romjue's insurer had agreed. Romjue's insurance carrier delivered a $50,000 check to Thomas' and LPS' legal counsel on December 15. On January 7, 1998, $39,015.40 was disbursed to Thomas, and $10,984.60 was disbursed to LPS as

full payment of LPS' subrogation interest for workers' compensation benefits previously paid to Thomas. The district court filed an order of dismissal of the action against Romjue on January 9.

The instant case began on December 15, 1998, when Thomas filed this action against LPS in the Workers' Compensation Court seeking additional workers' compensation benefits. LPS' answer alleged that Thomas' action was barred by the statute of limitations because more than 2 years had passed since LPS' last payment to Thomas on July 26, 1994. Additionally, LPS asserted that it was entitled to a credit of $39,015.40 against any additional benefits claimed by Thomas under the Nebraska Workers' Compensation Act. LPS filed a motion for summary judgment, which the trial judge granted along with the dismissal of Thomas' petition. The trial judge concluded that Thomas' claim was barred by the statute of limitations because LPS had made no payment of compensation to Thomas within the 2 years prior to the filing of her petition against LPS. Thomas appealed, and the Workers' Compensation Court review panel affirmed the trial judge's decision. Thomas appealed to this court. In that appeal, we incorrectly reversed the grant of summary judgment on the ground that the compensation court did not have statutory authority to grant summary judgment. See *Thomas v. Lincoln Public Schools*, No. A-99-1342, 2000 WL 1346885 (Neb. App. Sept. 19, 2000) (not designated for permanent publication). Thereafter, we granted LPS' timely motion for rehearing and vacated our earlier opinion. Thus, we now address the merits of Thomas' appeal.

## ASSIGNMENT OF ERROR

Thomas assigns, restated, that the compensation court erred in concluding that the payment from the tort-feasor, Romjue, was not "compensation" within the workers' compensation act which either tolled the running of the statute of limitations or set in motion a new 2-year limitations period.

## STANDARD OF REVIEW

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that

(1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. Neb. Rev. Stat. § 48-185 (Cum. Supp. 2000). As to questions of law, an appellate court in workers' compensation cases is obligated to make its own determinations. *Smart v. Scrivner/Food 4 Less*, 254 Neb. 111, 574 N.W.2d 505 (1998).

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Woodward v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

Thomas argues that payment from a third-party tort-feasor is a payment of compensation within the meaning of the workers' compensation act which tolls the 2-year statute of limitations found at Neb. Rev. Stat. § 48-137 (Reissue 1998). Thomas acknowledges the rule of law that benefits secured by an injured employee from collateral sources are not considered in fixing compensation under the workers' compensation act, nor do they affect the employer's liability for compensation to the injured employee. See, *Maxey v. Fremont Department of Utilities*, 220 Neb. 627, 371 N.W.2d 294 (1985); Neb. Rev. Stat. § 48-147 (Cum. Supp. 2000). However, Thomas points to the language of Neb. Rev. Stat. § 48-130 (Reissue 1998), which provides: "[N]or shall benefits derived from any other source than those paid or *caused to be paid* by the employer as herein provided be considered in fixing compensation under such act." (Emphasis supplied.) Thomas argues that LPS "caused" the $50,000 settlement to be paid and that therefore it is "compensation" rather than a collateral source payment. As we understand the argument,

Thomas contends that the "causation" stems from LPS' joining in the third-party action and seeking the district court's assistance to enforce the $50,000 settlement.

In *Maxey, supra,* the court held that payment of wages or reimbursement of medical expenses by an employer under an employee benefit plan or group health insurance agreement does not constitute remuneration in lieu of workers' compensation benefits so as to toll the statute of limitations unless the employer's conduct creates the reasonable inference that such payments were made with an intent that they constitute compensation and with the employer's conscious recognition of liability for compensation benefits. The court in *Maxey* relied heavily on §§ 48-130 and 48-147 in finding a legislative intent to maintain a distinct separation between benefits payable under the workers' compensation act and payments under plans paying medical expenses or lost time—whether sponsored by employee associations or the employer under group health plans. While we believe it also logically flows from *Maxey* that a similar separation is to be maintained between payments of workers' compensation benefits by the employer and a recovery from a negligent tort-feasor, we find that the statutory language of the workers' compensation act answers Thomas' argument that LPS "caused" the payment from Romjue's insurer.

Thomas' payment from Romjue's insurer was not "caused to be paid" by LPS simply because LPS was a party to the third-party action against Romjue. Section 48-118 gives LPS a statutory right to be a party to that litigation because of its subrogation interest for compensation previously paid to Thomas; in fact, it may institute that lawsuit. We hold that the employer's exercise of its statutory right to pursue its subrogation claim against a tort-feasor who injured its employee is not "causing" the payment of compensation under § 48-130. In reaching this conclusion, we note that this statute gives Thomas and LPS "an equal voice in the claim and the prosecution of such suit." See § 48-118. Disputes arising in the course of that joint prosecution of the third-party action are to be resolved by the district court before which the case is pending. See *id.*

Such a dispute arose when Thomas attempted to withdraw her offer to take $50,000 in settlement from Romjue, after Romjue's

insurer had accepted the offer. While LPS immediately resorted to the district court to enforce the settlement as § 48-118 allows, the fact is that LPS and Thomas agreed to settle the pending lawsuit against Romjue before the district court ruled upon LPS' motion to enforce the settlement proposal. As a consequence, the district court found that LPS' motion for enforcement of the settlement was moot and dismissed the action against Romjue in accordance with the stipulation signed by counsel for Thomas, Romjue, and LPS. Accordingly, there is absolutely no evidence, or reasonable inference from the evidence, that LPS "forced" or "caused" Thomas to accept the settlement.

■ The undisputed evidence is that the $50,000 settlement was one which Thomas proposed and that it was accepted by Romjue's insurer. Thus, the notion that LPS "caused" the money to be paid thereby making the settlement "compensation" is a flawed proposition which ignores the statutory scheme for the handling of third-party subrogation claims created in § 48-118. Additionally, Thomas ignores the fact that she proposed the $50,000 settlement figure, and she ultimately agreed to abide by her proposal to settle for that figure. The unconditional acceptance of an offer forms a binding contract. See *Bastian v. Weber*, 150 Neb. 709, 35 N.W.2d 791 (1949). The motion filed by LPS was merely intended to enforce the agreement, which even on this limited record appears to have had all of the hallmarks of a binding settlement agreement with Romjue's insurer. And the right to bring that matter to the attention of the district court is clearly provided for in § 48-118. Thus, even if payment by a third-party tort-feasor could be "compensation," the evidence here fails to show that it was "caused" to be paid by LPS. LPS merely exercised its statutory right to participate in the action against Romjue. For all of these reasons, we reject Thomas' argument that LPS "caused" the payment so as to make it "compensation" under § 48-130.

■ However, Thomas notes that § 48-118 provides that any recovery against a third-party tort-feasor after payment of the expenses of recovery and the employer's subrogation interest "shall be treated as an advance payment by the employer, on account of future installments of compensation." A literal reading of this provision of § 48-118 seems to conflict with the lan-

guage of § 48-130 that no "benefits derived from any other source than those paid or caused to be paid by the employer . . . be considered in fixing compensation under [the workers' compensation act]."

There is no question that when there is a recovery from a third-party tort-feasor, the employer is entitled to credit against future workers' compensation liability for the tort recovery. See, § 48-118; *Nekuda v. Waspi Trucking, Inc.*, 222 Neb. 806, 388 N.W.2d 438 (1986) (holding that employer's obligation to pay benefits was suspended until advance payment was exhausted, at which time it was obligated to continue payment of benefits). Admittedly, *Nekuda* involves a lifetime award of benefits to a widow which, depending upon how long she lived and remained unmarried, could extend long enough to exhaust all of the advance payment money received from the third-party tort-feasor. And, if the widow remained alive and unmarried long enough to use up the advance payments of her weekly widow benefits from the third-party tort-feasor, she would be entitled to have her deceased husband's employer begin paying benefits again. See *Nekuda* (holding that employer's obligation to pay benefits is not "extinguished" by third-party recovery, but is merely "suspended" during time that employee's share of recovery pays future widow's benefits). Obviously, in the *Nekuda* situation, the "advance payments" from the tort-feasor would prevent the statute of limitations from barring the widow's claim for her husband's employer to reinstate benefits once the advance payments ran out, so long as suit for additional benefits was filed within 2 years after the advance payment was exhausted. See § 48-137.

However, the instant case is markedly different from *Nekuda*, because here we are not working against a factual backdrop of an undisputed week-by-week accrual of benefits which merely suspends the employer's obligations while the "advance payments" from the tort-feasor are applied to the weekly accrual of benefits. It is worth noting that Thomas made no allegation in her petition or introduced any evidence on the motion for summary judgment to show that workers' compensation benefits were accruing regularly or that there were any "unpaid" workers' compensation benefits. Her petition merely sought "addi-

tional" workers' compensation benefits without specification, and no evidence of accrued and unpaid benefits was introduced on the motion for summary judgment.

Notwithstanding this obvious problem for Thomas, even in cases like *Nekuda,* after exhaustion of the credit for advance payment, the statute of limitations runs to bar recovery if 2 years pass without either payment of benefits or institution of a suit against the employer for additional compensation benefits. The rule giving credit against future benefits for third-party settlements extends to cases involving less than lifetime awards. See *Turner v. Metro Area Transit,* 220 Neb. 189, 368 N.W.2d 809 (1985) (employer's insurer is entitled to treat as advances against possible future compensation payment amounts received in settlement by employee from third-party tort-feasor in excess of compensation benefits paid by employer).

The term "compensation" is not defined in the Nebraska Workers' Compensation Act. *Smart v. Scrivner/Food 4 Less,* 254 Neb. 111, 574 N.W.2d 505 (1998). The Supreme Court has noted that "compensation" is a chameleonlike expression which takes its meaning from the context in which the word is used in the statute. *Id.* As a guideline for what is meant by "compensation" in § 48-137, the Supreme Court has noted that the furnishing of any kind of benefit required by compensation law indicates an acceptance of liability and thus satisfies the policy of a "last payment" clause. *Smart, supra,* citing 7 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 78.43(h) (1997). However, from the above authority and the language of § 48-118, we conclude that the third-party settlement is to be considered "compensation." Therefore, we find that the issue comes down to this: When more than 2 years have passed since the employer's last payment of workers' compensation benefits, does a third-party recovery, which is considered "compensation," remove the bar of the statute of limitations and subject the employer to a suit for additional workers' compensation benefits if the recovery occurs after 2 years have passed? Our answer is no. We hold that once the case is barred by the statute of limitations, it remains barred.

In addition to the plain language of the statute of limitations, § 48-137, our holding derives from *Fenster v. Clark*

*Bros. Sanitation*, 235 Neb. 336, 455 N.W.2d 169 (1990), where the defendants argued that a voluntary payment made by the compensation insurer after the statute of limitations had run did not remove the bar of the statute of limitations. The Supreme Court said this argument was "legally correct." *Id.* at 345, 455 N.W.2d at 175. Thus, under *Fenster*, the fact that the payment from Romjue to Thomas is statutorily required by § 48-118 to be treated as "an advance payment by the employer" would not remove the bar of a statute of limitations which had already run at the time of the payment from the third-party lawsuit. See *B. F. Goodrich Co. v. Parker*, 282 Ala. 151, 209 So. 2d 647 (1968) (where cause of action for workers' compensation is already barred by statute of limitations, any payment of compensation after that time does not revive cause of action). See, also, *Harvie v. Bath Iron Works Corp.*, 561 A.2d 1023 (Me. 1989); *Terminal Van & Storage v. Hackler*, 270 Ark. 113, 603 S.W.2d 893 (1980) (payment for medicine after statute of limitations has run does not revive statute for any other form of compensation benefits).

If a voluntary payment made by the employer's insurer in *Fenster, supra,* was found to be inadequate to remove the bar of the statute of limitations, then logic dictates that a payment from a third party via a third-party lawsuit, although it is legally considered "compensation," could not have a greater effect on the statute of limitations. In short, once 2 years passes without a payment of compensation from the employer, which could be by way of an "advance payment" from a third-party suit against a tort-feasor (before the 2-year statute runs), by direct payment from the employer or its insurer, or by a payment "caused" to be made by the employer, the statute of limitations bars further suit against the employer. And, while institution of a suit against the employer within 2 years of the last payment would toll the statute of limitations, the action against LPS involved in this appeal was not filed until December 15, 1998, when the last payment of benefits admittedly occurred July 26, 1994. Thus, the instant action was barred by the 2-year statute of limitations as found by the workers' compensation trial judge, and we affirm.

AFFIRMED.